UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 10-175(DSD/FLN)

Duane Evans, Jr., et al.,

    Plaintiffs,

v.                                                          **ORDER**

Breg, Inc., et al.,

    Defendants.

This matter is before the court upon the parties' responses to the court's June 10, 2010, order to brief the propriety of transferring this case pursuant to 28 U.S.C. § 1404(a). Based on a review of the file, record and proceedings herein, the court transfers this case to the United States District Court for the Western District of North Carolina.

**BACKGROUND**

This is one of thousands of product-liability actions filed in recent years in the District of Minnesota by plaintiffs who have no connection to Minnesota against defendants who have no connection to Minnesota regarding events that did not occur in Minnesota and that had no impact within Minnesota. The vast majority of these actions have been filed in this district because, if they were filed by the plaintiffs in their home states (or almost anywhere else), they would be dismissed under the applicable statutes of

limitations.  The Minnesota Legislature has enacted unusually long statutes of limitations.[1]  Minnesota's statutes of limitations do not apply, however, to claims by nonresidents arising on or after August 1, 2004, that are based on the law of another state.  See Minn. Stat. § 541.31 subdiv. 1(a) ("If a claim is substantively based: (1) upon the law of one other state, the limitation period of that state applies; or (2) upon the law of more than one state, the limitations period of one of those states chosen by the law of conflict of laws of this state applies."); accord Fleeger v. Wyeth, 771 N.W.2d 524, 525 (Minn. 2009).

    This case is typical.  Plaintiffs Duane Evans, Jr. and Shannon Evans (collectively "Plaintiffs") are citizens of North Carolina. (Compl. ¶ 9.)  Defendants DJO, LLC and DJO, Inc. (collectively "DJO"), I-Flow Corporation ("I-Flow") and Curlin Medical, Inc. are Delaware corporations with their principal places of business in California.  (Compl. ¶¶ 12, 13, 16.)  Defendant McKinley Medical, LLC is a Colorado corporation (although its name suggests otherwise) acquired by defendant Moog, Inc. in 2006 (Compl. ¶ 14); Moog, Inc. is a New York corporation with its principal place of business in New York (Compl. ¶ 15.)  Defendants Stryker Corporation and Stryker Sales Corporation are Michigan corporations with their

---

[1] See Minn. Stat. § 541.05 (providing a six-year limitations period for negligence and fraud claims and a four-year period for strict-liability claims); Minn. Stat. § 336.2-725 (providing a four-year limitations period for warranty claims).

principal places of business in Michigan (Compl. ¶ 17.)  Defendant Breg, Inc. is a California corporation with its principal place of business in California (Compl. ¶ 10); defendant LMA North America, Inc. is a Nevada corporation with its principal place of business in California (Compl. ¶ 11); and defendant Advanced Infusion, Inc. is an Arizona corporation with its principal place of business in Arizona (Compl. ¶ 18.)[2]  Duane underwent shoulder surgery in New York in 2006 (Compl. ¶ 22), and he and his wife Shannon now sue defendants for damage to his shoulder joint that allegedly resulted from the treatment of his postsurgical pain with a pain pump.

## DISCUSSION

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Cases transferred under § 1404(a) retain the law of the transferor forum. See Ferens v. John Deere Co., 494 U.S. 516, 523 (1990) (§ 1404(a) transfer does not change law applicable in diversity case); Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH, 495 F.3d 582, 586 (8th Cir. 2007) (after § 1404(a) transfer, "the transferee court applies the choice-of-law

---

[2] The parties stipulated to dismissal of Breg, Inc., LMA North America, Inc. and Advanced Infusion, Inc.  (See Doc. Nos. 41, 57.)

rules of the state in which the transferor court sits"). Deciding whether to order a transfer under § 1404(a) "require[s] a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). The relevant factors fall generally into three categories: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. Id. There is, however, "no exhaustive list of specific factors to consider ...." Id.

The first two factors — the convenience of the parties and the convenience of the witnesses — overwhelmingly favor transfer. Because none of the parties is located in Minnesota, none of the relevant events occurred in Minnesota, none of the alleged injuries has been suffered in Minnesota, and none of the evidence is present in Minnesota, Minnesota does not appear to be convenient for *anyone* — including Plaintiffs, who live in North Carolina. *Any* state with *any* connection to this lawsuit would be more convenient than Minnesota.[3]

---

[3] Of course, plaintiffs can choose to inconvenience themselves, and, if litigating in Minnesota were convenient for defendants and third-party witnesses, the court would not transfer the case solely to eliminate an inconvenience that Plaintiffs want to bear. Cf., e.g., CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc., 259 F.R.D. 398, 409 (D. Minn. 2009). For the reasons described above, however, litigating in Minnesota would not be convenient for defendants or third-party witnesses.

In resisting transfer, Plaintiffs point to the deference that is normally afforded to a plaintiff's choice of forum. (Pls.' Br. [Doc. No. 45] 7 ("Plaintiffs have chosen to bring this action in the District of Minnesota, and the normal presumption favors the Plaintiffs' choice.").)  It is true that, as a general rule, courts afford some deference to a plaintiff's choice of forum; as a practical matter, this means that a defendant seeking a transfer under § 1404(a) bears the burden of showing that a transfer is warranted.  Terra Int'l, 119 F.3d at 695.  But this deference "is based on an assumption that the plaintiff's choice of forum will be a convenient one."  In re Apple, Inc., 602 F.3d 909, 913 (8th Cir. 2010).  When that assumption does not hold — as here, where the plaintiffs have chosen an inconvenient forum — the plaintiffs' choice of forum fades in importance.

Indeed, the Eighth Circuit recently held in In re Apple that a plaintiff's choice of forum "was entitled to *minimal* weight in the § 1404(a) determination" because there was "no relevant connection" between the plaintiff's chosen forum and the dispute or any of the parties or potential witnesses.  Id. (emphasis added). Further, "the risk that the plaintiff chose the forum to take advantage of favorable law," rather than because the forum has a connection to the dispute, counsels against deferring to the plaintiff's choice of forum.  Id.  There is no doubt that Plaintiffs filed this action in Minnesota "to take advantage" of

5

what they believed to be "favorable law," and not because Minnesota has any connection to this dispute.  Indeed, Plaintiffs implicitly acknowledge as much by asking the court, if it transfers the case, to opine that the Minnesota statute of limitations will apply after the transfer.[4]  (See Pls.' Br. 18-19 ("Plaintiffs respectfully request that ... the Court indicate that the transfer is being effected for the convenience of the parties; and therefore any procedural rights Plaintiffs would have had under Minnesota law should follow.").)

Because Plaintiffs cannot credibly argue that Minnesota is a convenient forum, and because little or no deference is due their choice of forum under In re Apple, Plaintiffs have little choice but to focus their opposition to a transfer on the interests of justice.  This factor, however, also strongly favors transfer.

This court has been inundated with product-liability actions that have little or no connection to Minnesota.  No one can fault the plaintiffs who have brought these actions for seeking the potential advantage of Minnesota law.  But such forum shopping nevertheless imposes heavy burdens on this court and diverts the court's limited resources away from litigants and cases that have connections to the District of Minnesota.

---

[4] The court cannot render such an opinion, because the relevant question — whether under Minnesota law, which will travel with this case, the Minnesota statute of limitations applies — is not before the court.

In the past, the burden imposed on this district by these out-of-state actions has been alleviated by the fact that most of them — including, most significantly, thousands of hormone-replacement therapy cases — have been consolidated into multi-district litigation ("MDL"). See In re Prempro Prods. Liab. Litig., MDL No. 1507 (JPML), No. 4:03-CV-1507-WRW (E.D. Ark.). The Judicial Panel on Multidistrict Litigation ("JPML") has twice declined to consolidate pain-pump cases into an MDL. See In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig., MDL No. 2139, 2010 WL 1790214 (JPML May 5, 2010); In re Shoulder Pain Pump-Chondrolysis Prods. Liab. Litig., 571 F. Supp. 2d 1367 (JPML 2008). The panel has found that the cases are too factually dissimilar to merit MDL treatment, and thus the burden of handling each of the dozens of pain-pump cases filed to date in this district will fall on the judges of this district. It in no way furthers the interests of justice for this district to keep numerous pain-pump cases with no connection to Minnesota and delay justice for residents of Minnesota and others who seek to litigate disputes that have a genuine connection to Minnesota.

Plaintiffs argue that keeping all of these pain-pump cases in Minnesota would further the interests of justice because the cases could be litigated more efficiently if they were all litigated in the same district. (See Pls.' Br. 12-13.) By this logic, plaintiffs' lawyers could routinely force a de facto MDL on a

7

district simply by filing enough similar cases in that district. This would allow plaintiffs' lawyers to sidestep the JPML and the MDL process — the very mechanism that federal courts have implemented for handling mass-tort actions.

Efficiency in litigation furthers the interests of justice, because efficiency frees up resources and thus speeds up the resolution of disputes. But the judicial efficiencies to be had in this litigation are modest, which is precisely why the JPML has twice refused to consolidate pain-pump cases into an MDL, and one of the reasons why pain-pump cases are no longer being transferred to a single judge under this district's related-cases policy. Further, over time the parties and their attorneys, many of whom are likely to be repeat players in these cases, will realize efficiencies as they litigate pain-pump cases. The efficiencies realized if these cases are litigated in front of different judges in one district will differ only modestly from the efficiencies realized if these cases are litigated in front of different judges in different districts. Even if some additional judicial efficiencies might result as the judges of this district became familiar with the pain-pump cases, federal district courts are not specialist courts, and the federal courts thus routinely — by design — forgo efficiencies that might result from specialization.

In opposing transfer, Plaintiffs rely heavily on <u>Ivey v. McKinley Medical, L.L.C.</u>, No. 08-6407, slip op. (D. Minn. Dec. 14,

2009), in which a judge of this district decided not to transfer a pain-pump case.[5] For the reasons given above, the court respectfully disagrees with Ivey. Moreover, even if the court agreed with Ivey, a different outcome is required in this case because of In re Apple, which was decided by the Eighth Circuit four months after Ivey was issued.[6] In re Apple held that a district court abused its discretion by refusing to transfer a case that had no relation to the district in which the case was filed. 602 F.3d at 916. Plaintiffs' lawsuit has no more relation to the District of Minnesota than the lawsuit in In re Apple had to the Western District of Arkansas. For the same reasons that the Eighth Circuit ordered that In re Apple be transferred out of the Western District of Arkansas, the Eighth Circuit might very well order that Plaintiffs' action be transferred out of the District of Minnesota. Therefore, for the convenience of the parties and in the interests of justice, transfer of this action to North Carolina is warranted.[7]

---

[5] At the time, there was some hope that the pain-pump cases would be consolidated into an MDL.

[6] The court also notes that "section 1404(a) accords the district court much discretion in deciding" motions to transfer, and thus, even on identical facts, different courts may reasonably reach different decisions under § 1404(a). Terra Int'l, Inc., 119 F.3d at 697.

[7] Because the court transfers this action, it expresses no opinion on the motions to dismiss [Doc. Nos. 22, 26, 30, 40].

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that this action is transferred to the United States District Court for the Western District of North Carolina.

Dated:  July 26, 2010

                                                s/David S. Doty
                                                David S. Doty, Judge
                                                United States District Court